Whitaker, Judge,
delivered the opinion of the court:
Plaintiff entered into a contract with defendant on September 22, 1944, to extract the mercury from what the con *685 tract called “mercury sulphate sludge”, which was a waste product from the manufacture of Lewisite. Between September 14, 1944 and January 9, 1945, defendant shipped plaintiff 56,353 pounds of a substance described on some of the shipping documents as “mercuric chloride sludge”, and on others as “mercury sludge recovered.”
Defendant knew the sludge contained arsenic trioxide, but did not inform plaintiff of this. A chemical analysis of it, made after delivery, showed that it contained 23 to 29 percent of arsenic trioxide, 10 to 12 percent mercuric chloride, and almost 3 percent organic arsenic, and some hydrochloric acid, sulphur and chlorine.
Shortly after the work on the contract had begun, plaintiff discovered that in the distillation process arsenic fumes were emitted. Plaintiff asked defendant to furnish him and his employees with gas masks and protective clothing. Defendant did so, but, notwithstanding, plaintiff and others working with him had attacks of nausea and vomiting, swollen gums, swollen joints, blistering of the face, hands and feet, muscular pain and fatigue, loss of energy and appetite. After the first attack, which was in the early part of the work, plaintiff did not have a recurrence of it until the spring of 1945, when his furnace exploded, from a cause unknown, emitting a much greater quantity of arsenic fumes than usual, which caused plaintiff to have another attack. The contract was terminated in August of that year without further difficulty.
Some time in 1946 plaintiff began to develop deformities in his hands and feet. This became progressively worse during 1947 and 1948, and by 1949 plaintiff became completely disabled by rheumatoid arthritis.
Our Trial Commissioner has made findings of fact, from which the above recitation is taken, and has recommended the conclusion of law to be entered, accompanied by an opinion. We adopt his findings with only slight modifications and we concur in his recommendation for the conclusion of law to be entered. We also agree with the Commissioner’s opinion that no causal connection has been shown between *686 plaintiff’s present condition and the metal poisoning he suffered from working with the sludge shipped him by defendant.
It is agreed that plaintiff was suffering from rheumatoid arthritis. The Commissioner says the cause of this disease is unknown, and plaintiff admits this on page 6 of his exceptions and brief. The Commissioner’s finding reads, in part:
While the causes and cure of rheumatoid arthritis are medically obscure, in the judgment of qualified medical witnesses who testified for the parties there is no known causal connection between rheumatoid arthritis and heavy metal poisoning. * * *
Plaintiff must show this causal connection. There must have been a showing of a reasonable probability, at least, that the arthritis was caused by breathing the fumes. There is no such showing.
We are, however, troubled by this statement in the Commissioner’s opinion:
The defendant was negligent in not advising the plaintiff of the full nature and origin of the sludge which had been shipped for processing and, were the disabilities suffered by the plaintiff at the time, as described above, the ground of plaintiff’s suit, there would be scant doubt as to the defendant’s liability.
If this is correct, plaintiff would be entitled to recover for the temporary disability caused by the arsenic poisoning.
The Commissioner found that it was customary to describe sludge by “its most valuable component, which in this case was mercury.” Pie further found: “In common chemical parlance it is not incorrect to refer to such sludge as a mercuric chloride sludge, even though it contains such a large element of arsenic trioxide. The plaintiff knew or should have known that the sludge which was to be shipped for processing was not a chemically pure substance, and apparently did not perform a chemical analysis to determine the elements present in the sludge prior to processing it to extract the mercury contents, but relied upon the description of the material as provided in the contract, shipping documents and *687 on the containers. Graduate chemists were on the plaintiff’s payroll to assist plaintiff in performance of the contract.”
In view of this finding, we do not think defendant misrepresented the material, and we doubt that it was under the duty to warn plaintiff that it might encounter toxic fumes in the process of working with the sludge. It seems to us plaintiff should have known that this was a possibility, but we do not need to determine this, because plaintiff himself discovered the presence of arsenic in the sludge soon after he began working with it and requested defendant to furnish him with protective clothing and masks. Defendant did so, and plaintiff continued the work. Thereafter, there was no withholding of information. Plaintiff by experience had discovered the danger. If he chose to continue to work with this substance with knowledge of its characteristics, he assumed the risk of doing so, and, having done so, he is not entitled to recover.
In the Restatement of the Law of Torts, § 893, comment b, pages 493,494, it is said:
The defense of assumption of risk normally exists also, even though the defendant has contracted not to maintain a dangerous condition and violates his contractual obligation by so doing. Thus, where a person employs a contractor to do work upon his building and has agreed to supply safeguards for the protection of the contractor, he is not liable in an action of tort for harm to the contractor resulting from the failure to provide such safeguards if, at the beginning of the work, the contractor discovers their lack and appreciates the risk but nevertheless continues.
Both because plaintiff assumed the risk and because no causal connection between breathing the fumes and his rheumatoid arthritis is shown, we are of opinion plaintiff is not entitled to recover either for the temporary poisoning or for the rheumatoid arthritis.
Plaintiff’s petition will be dismissed.
It is so ordered.
Need, Justice (Bet.) sitting by designation; Dureee Judge; and Laramoke, Judge, concur.